IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERMAINE WILLIAMS | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 16-6379 |
| | : | |
| WHITAKER, ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**                                                                                        **MARCH  10 , 2020**

Presently before the Court is Defendants' Partial Motion for Summary Judgment (Defs.' Mot., ECF No. 37) and Plaintiff's response thereto (Plf.'s Resp., ECF No. 43). For the following reasons, Defendants' Motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Jermaine Williams, a former prisoner at the State Correctional Institution at Somerset, Pennsylvania ("SCI Somerset"), asserts claims against Corrections Officers Whitaker and Valko,[1] and their employer, the Commonwealth of Pennsylvania Department of Corrections ("DOC"), under 42 U.S.C. § 1983 and Pennsylvania law. Williams alleges that on January 19, 2015, Defendants' recklessness, deliberate indifference to his safety, and negligence caused him to be thrown out of his wheelchair and sustain injuries while being transported by Defendants from SCI Somerset to the State Correctional Institution at Graterford, Pennsylvania ("SCI Graterford").

---

[1] The Complaint identifies these Defendants only as Whitaker and Valko. (Compl. ¶¶ 5-6, ECF No. 1.) Defendants' Motion indicates that these Defendants are named Ryan Whitacre and Michael Valko. (Defs.' Mot. 1 n.1.) As the Complaint was not amended, we will refer to these Defendants by their names in the Complaint: "Whitaker" and "Valko."

### A. Procedural Background

On December 12, 2016, Plaintiff filed a Complaint asserting claims under both federal and state law. (Compl.) Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments (Count One). Plaintiff also alleges that Defendants negligently operated a motor vehicle, in violation of 42 Pa. Cons. Stat. § 8522 (Count Two). On December 30, 2019, Defendants filed their Partial Motion for Summary Judgment. (Defs.' Mot.)[2] Defendants' Motion seeks summary judgment on Count One. On February 11, 2020, Plaintiff filed a Response in Opposition. (Plf.'s Resp.)[3]

### B. Factual Background[4]

The record before this Court contains the following facts. On January 19, 2015, Plaintiff and Steven Parker, both prisoners in wheelchairs, were being transported by DOC Corrections Officers Valko and Whitaker from SCI Somerset to SCI Graterford in a wheelchair accessible van. (Stipulation ¶ 1, Defs.' Mot. Ex. A; Plf.'s Dep. 60-66, Defs.' Mot. Ex. C; Valko Statement,

---

[2] Defendants attached the following exhibits to their Motion: Stipulation (Exhibit A); Plaintiff's Complaint (Exhibit B); Plaintiff's November 13, 2017 deposition in another matter, *Jermaine Williams v. Wexford Health Sources, Inc., et al.*, Civil Action No. 16-03629 (Exhibit C); statement signed by Defendant Valko on January 21, 2015 (Exhibit D); statement signed by Plaintiff on January 25, 2015 (Exhibit E); statement signed by Steven Parker on February 4, 2015 (Exhibit F); and an Employee Report of Incident prepared by Defendant Whitaker on January 19, 2015 (Exhibit G).

[3] Plaintiff attached only one exhibit to his Response: the declaration of Plaintiff (Exhibit 1). Notably, a plaintiff's declaration may create genuine issues of material fact. *See Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 320-21 (3d Cir. 2014) ("[A] single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment. This remains true even if the affidavit is 'selfserving.'"); *accord Paladino v. Newsome*, 885 F.3d 203, 210 (3d Cir. 2018); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161–63 (3d Cir. 2009).

[4] We view all of the facts and draw all reasonable inferences therefrom in the light most favorable to Plaintiff, the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Defs.' Mot. Ex. D; Plf.'s Statement, Defs.' Mot. Ex. E; Parker Statement, Defs.' Mot. Ex. F; Whitaker Report, Defs.' Mot. Ex. G.) Plaintiff and Parker were handcuffed and shackled with a black box and chain. (Plf.'s Decl. ¶ 4c, Plf.'s Resp. Ex. 1; Plf.'s Statement; Parker Statement.) The van lacked seat belts for the prisoner passengers. (Plf.'s Decl. ¶ 4b; Plf.'s Dep. 63-64; Plf.'s Statement; Parker's Statement; Whitaker Report.) There was a box of straps inside the van, but Valko and Whitaker did not use the straps because they could not figure out how. (Valko Statement.)[5] There were no DOC manual, training materials, or instructions on how to secure a wheelchair user in a transport vehicle. (Stipulation ¶¶ 3, 4, 7; Valko Statement.) Moreover, Valko and Whitaker had received no training on how to transport wheelchair users. (Stipulation ¶ 9.) A supervisor was not present to supervise Valko and Whitaker. (*Id*. at ¶ 5.)

Parker and Plaintiff were concerned that they were not safely secured in the van. (Parker Statement; Plf.'s Statement; Plf.'s Decl. ¶ 4d.) They complained to Valko and Whitaker. (Parker Statement; Plf.'s Statement; Plf.'s Decl. ¶ 4d.) Valko and Whitaker responded, "just hold on to your wheelchair." (Parker Statement; Plf.'s Statement; Plf.'s Decl. ¶ 4e.) Parker tried to explain his safety concerns to Valko and Whitaker. Parker told Valko and Whitaker, "I am disabled and it would be a challenages [sic] to hold on to my wheelchair handcuffed chained and shackled unable to protect myself." (Parker Statement.) Valko and Whitaker ignored Parker's safety concerns.

---

[5] There is a factual dispute as to how Plaintiff and Parker's wheelchairs were secured in the van. Valko states that Plaintiff and Parker "were secured in their wheelchairs with a locking device attached to the floor of the van and was checked several times for no movement of wheelchairs." (Valko Statement.) At Plaintiff's deposition, he testified that there was nothing securing his wheelchair in the van. (Plf.'s Dep. 66.) In Plaintiff's declaration, he stated that the wheelchairs were sliding back and forth during the trip. (Plf.'s Decl. ¶ 4f.) In their signed statements, neither Plaintiff nor Parker mention whether their wheelchairs were secured to the van floor. (Parker Statement; Plf.'s Statement.)

3

Valko drove the van and Whitaker was a passenger. (Valko Statement; Whitaker Report; Parker Statement; Plf.'s Decl. ¶ 4a.) During the trip, Plaintiff and Parker's wheelchairs were sliding back and forth in the van. (Plf.'s Decl. ¶ 4f.) Plaintiff and Parker complained several times to Valko and Whitaker. (*Id*.)[6] Valko and Whitaker ignored their complaints. (*Id*. at. ¶ 4g.)

Approximately five to ten minutes from SCI Graterford, at a four-way intersection, a car did not stop at the stop sign and it made a right turn in front of the van. (Valko Statement; Whitaker Report.) Valko hit the brakes to avoid a collision with the car. (Valko Statement; Whitaker Report.) Plaintiff was thrown out of his wheelchair and onto the floor. (Valko Statement; Plf.'s Statement; Parker Statement; Whitaker Report.) Plaintiff became unconscious. (Parker Statement; Whitaker Report; Plf.'s Statement; Plf.'s Dep. 110.) The sudden stop also moved Parker's "body crazy." (Parker Statement; Plf.'s Dep. 66.)

After the short stop, Valko drove the van through the intersection and pulled off to the side of the road. (Valko Statement.) Valko and Whitaker notified SCI Somerset. (Valko Statement; Whitaker Report.) SCI Somerset notified SCI Graterford. (Valko Statement; Whitaker Report.) Valko and Whitaker did not call an ambulance. (Parker Statement; Whitaker Report; Plf. Decl. ¶ 4j.) Whitaker lifted Plaintiff off the floor and placed him back in his wheelchair, still unconscious. (Whitaker Report; Plf.'s Dep. 110.)

Valko then continued driving the van to SCI Graterford. (Valko Statement; Whitaker Report.) Whitaker rode in the back of the van with Plaintiff to secure him to the wheelchair because Plaintiff was unconscious and there were no seat belts. (Whitaker Report; Plf.'s Dep. 107-10; Parker Statement.) Plaintiff urinated on himself. (Parker Statement; Whitaker Report.)

---

[6] Valko's signed statement and Whitaker's report do not mention any complaints by Parker or Plaintiff. (Valko Statement; Whitaker Report.)

4

When they arrived at SCI Graterford, Plaintiff was received by SCI Graterford medical staff. (Valko Statement; Whitaker Report; Plf.'s Dep. 111.) Plaintiff was then taken to the hospital. (Plf.'s Dep. 67; Plf.'s Statement; Plf.'s Decl. ¶ 4k.)[7] Valko and Whitaker completed incident reports. (Valko Statement; Whitaker Report.) Valko and Whitaker received a written reprimand from the DOC for failing to ensure that Plaintiff and Parker were properly secured in the van. (Stipulation ¶ 8; Plf.'s Dep. 66, 108.)

There is no information available concerning other wheelchair users being injured during transport from 2014 to 2018 because the DOC did not maintain that information. (Stipulation ¶ 6.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] factual dispute is material only if it might affect the outcome of the suit under governing law." *Id*. When making this determination, the court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

---

[7] The nature and extent of Plaintiff's injuries are disputed. (Defs.' Mot. to Stay ¶ 6, ECF No. 42.)

5

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## III. DISCUSSION

Defendants move for summary judgment on Count One, which alleges Section 1983 claims against Whitaker and Valko, in their official and individual capacities, as well as a *Monell* claim[8] against the DOC.

### A. Section 1983 Claims (Count One)

Plaintiff asserts a violation of his Eighth and Fourteenth Amendment rights. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and internal quotation marks omitted). A prisoner's right to be free of "cruel and

---

[8] A *Monell* claim is a Section 1983 claim asserted against a municipality, premised on the municipality or its policymaker's action or omission that was the "moving force" behind the alleged unconstitutional conduct. *Monell v. City of New York Dep't of Social Servs.*, 436 U.S. 658, 694-95 (1978).

6

unusual punishment in violation of the Eighth Amendment, [is] made applicable to the States by the Fourteenth [Amendment]." *Estelle v. Gamble*, 429 U.S. 97, 101 (1976).

A prisoner can assert an Eighth Amendment violation through an excessive force claim or a deliberate indifference claim. *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986). Plaintiff's Complaint states:

> The individual defendants acted in reckless disregard of plaintiff's well-being, as they consciously disregarded plaintiff's plea to be safely secured in the van, thereby manifesting indifference for plaintiff's safety, and rendering them aware that they were creating a substantial risk of serious harm; yet they chose to ignore the risk.

(Compl. ¶ 23.) This allegation asserts a deliberate indifference claim. Moreover, neither party addresses excessive force in their filings. We therefore treat Plaintiff's Eighth Amendment claim as a claim based upon Defendants' deliberate indifference to the substantial risk of serious harm to Plaintiff.

To establish a deliberate indifference claim under the Eighth Amendment, a plaintiff must show through admissible evidence that:

(1) he was incarcerated under conditions posing a substantial risk of serious harm,

(2) the official was deliberately indifferent to that substantial risk to his health and safety, and

(3) the official's deliberate indifference caused him harm.

*Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer*, 511 U.S. at 834). "'Deliberate indifference' in this context is a subjective standard: 'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). The Eighth Amendment imposes duties on officials to "take reasonable measures to guarantee the safety of inmates." *Farmer*, 511 U.S. at 832

(citations omitted). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

For Eighth Amendment deliberate indifference claims related to prisoner transportation, liability may arise when a defendant refuses to stop driving recklessly, refuses to secure a prisoner, or refuses to intervene, despite a prisoner's complaints. *See Williams v. City of Phila. Office of the Sheriff*, No. 17-2697, 2020 U.S. Dist. LEXIS 9306, at *12-19 (E.D. Pa. Jan. 21, 2020) (collecting cases).[9]

### i. Section 1983 Claims Against the DOC, and Whitaker and Valko in their Official Capacities

Plaintiff asserts Section 1983 claims against the DOC, and Whitaker and Valko in their official capacities. Defendants argue, and Plaintiff agrees, that the Eleventh Amendment bars Plaintiff's Section 1983 claims against the DOC and against Whitaker and Valko in their official capacities. *See Jones v. Unknown*, 944 F.3d 478, 482-83 (3d Cir. 2019) (holding that plaintiff's claims against state officials in their official capacities were barred by sovereign immunity); *Lavia v. Pa. Dep't of Corr., State Corr. Inst. at Greene*, 224 F.3d 190, 195 (3d Cir. 2000) (recognizing that the DOC "shares in the Commonwealth's Eleventh Amendment immunity"). Accordingly, Defendants' Section 1983 claims against the DOC, and Whitaker and Valko in their official capacities will be dismissed.

### ii. Section 1983 Claims Against Whitaker and Valko in their Individual Capacities

Plaintiff asserts Eighth Amendment deliberate indifference claims against Whitaker and Valko in their individual capacities. Whitaker and Valko argue that they are entitled to summary

---

[9] In the *City of Phila. Office of the Sheriff* memorandum opinion, we addressed a similar set of circumstances involving the same Plaintiff. That memorandum opinion contains a more comprehensive discussion of the applicable law.

8

judgment on these claims because Plaintiff cannot establish that they knew their actions presented a substantial risk to the prisoners' safety. Although Whitaker and Valko's lack of training, the absence of written instructions on transporting a wheelchair user, and the lack of a list of wheelchair users injured during DOC transport support this contention, Parker's signed statement, Plaintiff's signed statement, and Plaintiff's declaration suggest that Whitaker and Valko knew they were endangering the prisoners. According to Plaintiff and Parker, they complained about their safety concerns to Valko and Whitaker before and during the drive. According to Plaintiff and Parker, Valko and Whitaker initially responded, "just hold on to your wheelchair," and then ignored the prisoners' subsequent complaints for the rest of the trip. Moreover, a jury could conclude that Whitaker and Valko knew of a substantial risk to the prisoners' safety "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. The record reveals that Whitaker and Valko were at least aware that Plaintiff and Parker were in wheelchairs, that they were handcuffed and shackled, and that they were not secured in the van with a seat belt. Accordingly, summary judgment is not appropriate as to Plaintiff's deliberate indifference claims against Whitaker and Valko in their individual capacities.

Defendants also argue that they are entitled to qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (per curiam) (quoting *Reichele v. Howards*, 132 S.Ct. 2088, 2093 (2012)). "A right is clearly established when the law is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. That does not require a prior precedent with indistinguishable facts, but existing precedent must have placed the statutory or constitutional question beyond debate." *Sauers v. Borough of*

*Nesquehoning*, 905 F.3d 711, 715 (3d Cir. 2018). "Existing precedent is sufficient to place a constitutional question beyond debate and to defeat qualified immunity only if it is controlling authority in the relevant jurisdiction, or if a robust consensus of cases of persuasive authority in the Court of Appeals has settled the question." *Id.*

Essentially, "qualified immunity is intended to protect officials absent 'fair warning' that their conduct violates constitutional guarantees." *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 177 (3d Cir. 2011). "The standard is 'fair warning' because the purpose of qualified immunity is not to protect malicious behavior that violates constitutional rights in a manner the precise likes of which have not yet been the basis of a lawsuit in this circuit." *Scott v. Becher*, 736 F. App'x 130, 133 (6th Cir. 2018). The Third Circuit has not specifically addressed Eighth Amendment liability in the context of prisoner transportation. "Although few circuits have addressed specifically an officer's use of a vehicle to injure an inmate, there is a clear consensus among the circuits . . . that infliction of pain and suffering without penological justification violates the Eighth Amendment in an array of contexts." *Thompson v. Commonwealth*, 878 F.3d 89, 103 (4th Cir. 2017) (collecting cases). "To conclude otherwise in the Eighth Amendment context would 'encourage bad actors to invent creative and novel means of using unjustified force on prisoners.'" *Becher*, 736 F. App'x at 133 (quoting *Thompson*, 878 F.3d at 103).

With regard to the driver, Corrections Officer Valko, at the time of the incident on January 19, 2015, the law was clear that prisoners had a right to be free from deliberate indifference to known substantial risks of serious harm to inmate safety and health, including in the context of prisoner transportation. *See Stewart v. Wenerowicz*, No. 12-4046, 2015 U.S. Dist. LEXIS 114307, at *35-38 (E.D. Pa. Aug. 27, 2015) (denying DOC corrections officers qualified immunity for a June 2011 incident of deliberate indifference even though "the Third Circuit has

not issued a binding decision addressing officials' deliberate indifference to an inmate's health and safety while transporting the inmate in a prison vehicle . . . [b]ecause of the obviousness of the danger, and because the right to safe and humane conditions of confinement is clearly established."); *see also Sterling v. Borough of Minersville*, 232 F.3d 190, 198 (3d Cir. 2000) ("[T]he concomitant constitutional violation was apparent notwithstanding the fact that the very action in question had not previously been held to be unlawful.").

In addition, although there is no Third Circuit decision applying the Eighth Amendment in the context of prisoner transportation, there are decisions in the Western District of Pennsylvania as well as the Eighth and Fifth Circuits on point. *See*, *e.g.*, *Otero v. Catalogne*, No. 08-282, 2010 U.S. Dist. LEXIS 102160, at *32-33 (W.D. Pa. 2010) (finding that prisoner had stated a deliberate indifference claim because he alleged that driver consciously ignored the prisoners' requests to stop driving recklessly); *Otero v. Etter*, 2011 U.S. Dist. LEXIS 96830, at *11 (W.D. Pa. Aug. 26, 2011) (denying summary judgment on deliberate indifference claim because prisoner-plaintiff's declaration asserted that driver drove recklessly and failed "to heed the protests" of the prisoners); *see also Brown v. Fortner*, 518 F.3d 552, 561 (8th Cir. 2008) (affirming district court's denial of qualified immunity even though there were not any published cases in the Eighth Circuit addressing deliberate indifference in the context of prisoner transportation because cases addressing deliberate indifference to the safety of prisoners in general provided notice; therefore, corrections officer "had 'fair warning' that driving recklessly while transporting a shackled inmate who had been denied the use of a seatbelt and ignoring requests to slow down violated the constitutional prohibition against cruel and unusual punishment."); *Brown v. Mo. Dep't of Corr.*, 353 F.3d 1038, 1040 (8th Cir. 2004) (concluding that prisoner had stated a Section 1983 claim under the Eighth Amendment because he alleged

11

that corrections officers refused to fasten his seat belt and drove recklessly); *Brown v. Morgan*, 1994 U.S. App. LEXIS 30930 at *2 (8th Cir. Nov. 7, 1994) (finding that prisoner had stated a deliberate indifference claim where prisoner alleged that deputy sheriff refused to fasten the prisoner's seat belt, drove at high-speed in bad weather, taunted the prisoner, and refused to slow down); *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (concluding prisoner had pled an Eighth Amendment violation by alleging that the corrections officer "operated the prison van recklessly, knowing that there was a substantial risk that [prisoner] would be injured if the van stopped abruptly because [prisoner] was shackled in leg irons and handcuffs and was not provided with a seatbelt.").

With regard to the passenger, Corrections Officer Whitaker, the law was also clear at the time that corrections officers had a duty to intervene to ensure prisoner safety. "The restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs." *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002). If a corrections officer, "whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983." *Id.* at 650 (citation and internal quotation marks omitted). "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651 (citation omitted). A corrections officer cannot "escape liability by turning either a blind eye or deaf ear to the illegal conduct of their colleagues." *Id.* at 652. *See Stewart*, 2015 U.S. Dist. LEXIS 114307, at *37 (denying DOC corrections officers qualified immunity for failure to intervene in a June 2011 incident because "*any* reasonable officer would have known that he had a duty under the Eighth Amendment not to place an inmate at substantial risk of serious injury by driving recklessly and

erratically, or by failing to intervene to stop such driving, particularly when inmates were not secured with safety restraints, were shackled and unable to protect themselves in the event of a sudden turn or accident, and were pleading with the officers to stop driving in such a manner."); *see also Weimer v. Cty. of Fayette*, No. 17-1265, 2018 U.S. Dist. LEXIS 156655, at *25 (W.D. Pa. Sep. 14, 2018) ("[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Clearly, neither Valko nor Whitaker is entitled to qualified immunity on Plaintiff's Section 1983 claims.

## IV. CONCLUSION

Accordingly, Defendants' Partial Motion for Summary Judgment will be granted in part and denied in part.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. Barclay Surrick, J.**
